UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PETER JASON HELFRICH,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>JAMES GREG COX, et al.,<br>　　　　　　　　　　Defendants. | Case No. 2:15-cv-00384-JCM-PAL<br><br>**ORDER**<br>**and**<br>**REPORT OF FINDINGS AND**<br>**RECOMMENDATION**<br><br>(Mot. Enforce Settlement – ECF No. 47) |

Before the court is Defendants' Motion to Enforce Settlement Reached and Placed on the Record at the July 29, 2016 Early Mediation Conference (ECF No. 47) (the "Motion"), filed September 16, 2016. The undersigned entered an Order (ECF No. 48) instructing Plaintiff Peter Jason Helfrich ("Helfrich") to file a response by October 3, 2016. He was warned that a failure to timely file a response would result in an order granting the Motion. *Id.* Mr. Helfrich did not file a response or request an extension of time and the deadline to respond has now expired.

### BACKGROUND

This matter is a prisoner civil rights case in which Helfrich is suing multiple Defendants for events that took place while he was in the custody of the Nevada Department of Corrections ("NDOC") at the High Desert State Prison ("HDSP"). On March 3, 2015, Plaintiff commenced this action by filing a complaint. Upon initial review of the complaint, the court issued an Order (ECF No. 2) instructing Plaintiff to file an amended complaint to correct certain defects in his pleading. He filed his Amended Complaint (ECF No. 4) August 7, 2016.[1]

---

[1] In October 2015, Helfrich also filed an Emergency Motion for Preliminary Injunction (ECF No. 7) and Emergency Motion for Protective Order (ECF No. 8), which were both denied. *See* Oct. 26, 2015 Order (ECF No. 10). Helfrich appealed that order to the Court of Appeals for the Ninth Circuit. However, his appeal was dismissed (ECF No. 16) on March 22, 2016, based on his failure to comply with the Ninth Circuit's orders.

1

On April 11, 2016, the court entered a Screening Order (ECF No. 19) finding that the Amended Complaint stated plausible claims for: (1) equal protection violations against Defendants Neven and Howell; (2) failure to protect against John and Jane Doe caseworkers and correctional officers; (3) retaliation/due process violation against Defendants Lt. Oliver and Sgt. Sanchez. Given the nature of the claims in this case, the matter was automatically stayed for 90 days to allow the parties an opportunity to settle their dispute through the Inmate Mediation Program before the $350 filing fee was the assessed, an answer was filed, or discovery commenced. *Id*. *See also* Order (ECF No. 25).

The Nevada Office of the Attorney General filed a Limited Notice of Appearance (ECF No. 21) on behalf of named Defendants Neven, Howell, Anderson, Oliver and Sanchez ("Defendants"). As the automatic stay was set to expire on July 10, 2016, before the IEM was to take place, Defendants requested a 90-day extension of the stay, which the court granted. *See* Mot. Ext. Stay (ECF No. 30); June 10, 2016 Order (ECF No. 32).

On July 29, 2016, the parties participated in the Inmate Early Mediation Conference ("IEM"). *See* Mins. of Proceedings (ECF No. 39). Those in attendance were Mediator David Stephens, Helfrich via videoconference, Senior Deputy Attorney General D. Randall Gilmer ("DAG Gilmer"), Jo Gentry of the Nevada Department of Corrections, and Nancy Katafias, the Court Claims Manager for the State of Nevada. A settlement was reached and placed on the record. *Id*. Defendants filed a second Motion to Extend Stay (ECF No. 40) because the automatic stay was scheduled to expire and more time was needed to finalize settlement documents. The court granted this motion and extended the stay until September 2, 2016. *See* Aug. 8, 2016 Order (ECF No. 42).

Nearly a month later, Mr. Helfrich filed an untimely opposition to the second Motion to Extend Stay. *See* Response (ECF No. 44).[2] In his Response, Helfrich states that he "recants" and "refuses" the settlement proposal. *Id*. at 2. Because Defendants were unaware of Helfrich's

---

[2] Although the court received Helfrich's Response on September 1, 2016, the Clerk of the Court did not enter it on the docket until September 7th. Thus, CM/ECF did not generate a notice of electronic filing until September 7th. Accordingly, Defendants were unaware of Helfrich's Response until September 7th, at the earliest.

2

Response on September 2, 2016, they again filed a Motion to Extend Time (ECF No. 43) requesting an extension of the stay until October 3, 2016, to finalize the settlement documents. Once Defendants received notice of Helfrich's refusal of the settlement proposal, they filed the Motion seeking to enforce the settlement terms.

**I.     IEM Transcript (ECF No. 49)**

As an initial matter, Defendants' Motion requests that the court enter an order unsealing the IEM Transcript because they are seeking to enforce the terms of a settlement placed on the record. The court grants this request and will instruct the Clerk of the Court to unseal the transcript.

The IEM Transcript indicates that a settlement was reached on four essential terms. *See* Sealed IEM Tr. (ECF No. 49). Those four settlement terms were placed on the record, and Helfrich agreed to the terms. DAG Gilmer stated the first term on the record:

> Number one term for settlement is that NDOC is removing all verifiable debt that you have with NDOC as of today. And to the extent that the medical bill that was apparently sent to you by mistake as opposed to NDOC is located within 30 days, then that debt will also be included in the debt amount that is being forgiven today.

*See* Sealed IEM Tr. (ECF No. 49) at 7:9–14. When DAG Gilmer asked Helfrich if he understood and agreed to the term, Helfrich responded "Yes." *Id.* at 7:16. DAG Gilmer proceeded to the second term:

> Number two, NDOC will make an appointment with a medical provider within 30 days of the date that the settlement agreement is signed that states that—we'll make an appointment for you to see a medical provider within 30 days of the date of the settlement agreement to determine whether or not there's a medical reason for you to have double portion of meals.

*Id.* at 7:17–23. When DAG Gilmer asked Helfrich if he agreed to that term, Helfrich responded, "Okay. Yep. Yes." *Id.* at 7:25. DAG Gilmer stated the third term:

> Number three, NDOC will make an appointment with the chaplain within 30 days of the date that the settlement agreement is signed to determine whether or not you meet the religious criteria to take part in the Common Fare Menu; is that correct?

*Id.* at 8:1–5. Helfrich responded "Yes." *Id.* at 8:6. DAG Gilmer again asked Helfrich agreed to that term. *Id.* at 8:7. Helfrich again responded "Yes." *Id.* at 8:8. DAG Gilmer then placed the fourth term on the record:

/ / /

3

> Okay. And number four, based upon the understanding all these three things are agreed to amongst the parties, and we also understand that because the case is being settled today, pursuant to the order setting this mediation conference, the Court will waive the $350 filing fee that you would have otherwise been responsible for if we hadn't settled this case today.

*Id.* at 8:9–15. DAG Gilmer asked if Helfrich understood and agreed to that term. *Id.* at 8:16. Helfrich responded "Yes." *Id.* at 8:17.

DAG Gilmer advised Helfrich that counsel would prepare a settlement agreement and forward it to Helfrich for his signature to get the case dismissed. *Id.* at 8:21–25. DAG Gilmer also advised Helfrich that the 30 days spoken of in the terms of the settlement would begin once all of the documents were signed. *Id.* at 9:1–4. Mr. Helfrich responded "Okay." *Id.* at 9:5. Before going off the record, the court administrator questioned if all parties concurred with the resolution. *Id.* at 10:3–4. Ms. Katafias responded "Yes." *Id.* at 10:5. Helfrich responded "Yes." *Id.* at 10:6. DAG Gilmer responded "Yes." *Id.* at 10:7.

## II. Motion to Enforce (ECF No. 47)

In the current Motion, Defendants argue that they entered into a binding settlement agreement with Helfrich during the IEM, but Helfrich has had second thoughts about settling and has refused to sign a written agreement memorializing the terms of the settlement or a stipulation to dismiss this case. Defendants assert that Helfrich has no legal or factual reason to withdraw his agreement to settle the case at the IEM as memorialized in the transcript. Specifically, the material terms of the settlement required Plaintiff to agree to dismiss the matter with prejudice in exchange for the NDOC, on behalf of Defendants, promising to:

(1) Schedule an appointment with an NDOC physician at the facility where Plaintiff is housed within thirty (30) days of Plaintiff and the NDOC signing the settlement agreement;
   a. That the purpose of the medical appointment was for the physician to evaluate whether Plaintiff should be placed on double portions of food due to Plaintiff's claims that he was below weight;
   b. That the decision to provide double portions would be made in the sound medical judgment of the physician, with Plaintiff being informed on the sealed record that the physician was under no obligation to decide that double meal portions were required;
(2) Schedule an appointment for Plaintiff to meet with the NDOC Chaplain at the facility where Plaintiff is housed within thirty (3) days of Plaintiff and the NDOC signing the Settlement Agreement;

4

    a. That the purpose of the meeting is to permit Plaintiff and the Chaplain to discuss Plaintiff's request to be approved for the Common Fare Menu due to Plaintiff's claims of a sincerely held religious belief that requires him to eat common fare food as opposed to the regular menu offered to NDOC inmates without medical or religious need for a special diet;

    b. That the decision to provide Plaintiff with a common fare diet would be made by the Chaplain and that there was no agreed upon outcome as to whether Plaintiff would be approved for the Common Fare Menu;

(3) That the NDOC would forgive Plaintiff's debt as of July 29, 2016, which totaled $1,201.56; and

(4) That NDOC would also include in the amount of debt forgiven an outstanding medical bill that was apparently sent to Plaintiff as opposed to the NDOC if the bill was provided to NDOC's counsel within thirty (30) days of Plaintiff signing the Settlement Agreement.

The settlement was also reached due to Plaintiff taking into account the fact that he would not be responsible for paying the $350.00 filing fee should the case be resolved at or before the EMC.

*See* Mot. to Enforce (ECF No. 47-3) at 3–5; *see also* Mot. Exhibit C (ECF No. 47-3), Proposed Settlement Agreement. Defendants therefore request an order enforcing the terms of the settlement reached at the IEM and dismissing this case in its entirety.

### III. Helfrich's Arguments Against Settlement

Although Helfrich did not respond to the motion to enforce, the court will address his "recantation and refusal" of the settlement agreement discussed in his Response (ECF No. 44). The Response states that Helfrich recants the settlement proposal and refuses the settlement proposal. He claims that Defendants' counsel, DAG Gilmer, made misleading statements during the settlement discussions regarding "P-seg" inmates being denied work opportunities and training. *Id*. at 4. DAG Gilmer claimed that a petition for writ of habeas corpus was the proper vehicle to challenge the claims he alleged regarding "good time and work credits." *Id*. However, a court order and a statement by an unnamed deputy attorney general seem to contradict DAG Gilmer's assertion. *Id*. Although Helfrich provides a case number ("16EW00083 IB"), *id*., this number in not a case filed in the District of Nevada. It may be an internally administrative case number, but Helfrich did not provide a copy of the purported court order or the statement of the unnamed deputy attorney general.

Additionally, Helfrich claims that DAG Gilmer knowingly failed to disclose material information necessary and this fraud destroys the validity of the settlement. *Id*. at 5. Specifically,

5

he claims that DAG Gilmer misrepresented, by ignorance or design, that a writ of habeas corpus was the appropriate means to challenge good time and work time credits. Helfrich also asserts he is experiencing a continuing violation or wrong regarding his allegations in this case. *Id*. at 7. He claims Defendants' actions are deliberate, intentional, and retaliatory because he initiated this lawsuit. *Id*. at 8. For these reasons, as well as the fact that he "never signed his name in ink to any settlement agreement," he refuses the "take it or leave it proposal" by Defendants' counsel and argues that he should be allowed to move forward with this litigation. *Id*. at 9.

## **DISCUSSION**

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). This enforcement power extends to oral agreements. *Doi v. Halekulnai Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002); *Flick v. Bank of Am.*, 197 F. Supp. 2d 1229, 1231 (D. Nev. 2002) (noting that "public policy favors voluntary settlement") (citing *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 460–61 (9th Cir. 1989)). However, a district court may not summarily enforce a settlement "where material facts are in dispute." *In re City Equities Anaheim*, 22 F.3d at 958.

Here, the court finds that no material facts are in dispute and the IEM Transcript clearly shows that the parties came to a settlement on July 29, 2016. Once he accepted each and every term of the proposed settlement it became binding and was no longer a proposal he was free to reject after the fact. Helfrich erroneously contends that the parties' settlement was not valid because he never signed his name in ink to any written agreement. The Ninth Circuit has long held that a valid settlement is binding, even without a written agreement. *See, e.g.*, *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977). When the parties place the material terms of their agreement on the record, there is "no need for an evidentiary hearing on whether an agreement existed, or what its terms were" because "the parties dispelled any such questions in open court." *Doi*, 276 F.3d at 1139.

The essential terms of the settlement were placed on the record in this case, and Helfrich agreed to those terms. The proposed settlement agreement, attached as Exhibit C to Defendants'

Motion, mirrors the terms stated and agreed upon during the IEM which were memorialized on the record in a transcript. Although he acknowledged on the record that a settlement was reached, Helfrich did not sign the settlement agreement or the stipulation for dismissal as he agreed to do. He did not suggest alternative language to defense counsel or contend that he disagrees with the terms. Rather, he apparently changed his mind and argues other issues that were not raised during the IEM.

Having reviewed and considered the matter,

**IT IS ORDERED** that the Clerk of the Court SHALL UNSEAL Transcript of the Inmate Early Mediation Proceedings (ECF No. 49).

**IT IS RECOMMENDED** that:

1. Defendants' Motion to Enforce Settlement Reached and Placed on the Record at the July 29, 2016 Early Mediation Conference (ECF No. 47) be **GRANTED**.
2. Defendants be required to comply with the terms of the agreement within 30 days of the order approving and adopting this report and recommendation, if entered.
3. Defendants be required to file a certificate of compliance certifying to the court that they have complied with the agreed terms of the agreement memorialized on the record.
4. This case be **DISMISSED**, after the certificate of compliance is filed and the Clerk of the Court instructed to close this case.

DATED this 9th day of November, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

This Report of Findings and Recommendation is submitted to the assigned District Judge pursuant to 28 U.S.C. § 636(b)(1) and is not immediately appealable to the Court of Appeals for the Ninth Circuit. Any notice of appeal to the Ninth Circuit should not be filed until entry of the district court's judgment. See Fed. R. App. Pro. 4(a)(1). Pursuant to LR IB 3-2(a) of the Local Rules of Practice, any party wishing to object to a magistrate judge's findings and recommendations of shall file and serve *specific written objections*, together with points and

authorities in support of those objections, within 14 days of the date of service. *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 6, 72. The document should be captioned "Objections to Magistrate Judge's Report of Findings and Recommendation," and it is subject to the page limitations found in LR 7-3(b). The parties are advised that failure to file objections within the specified time may result in the district court's acceptance of this Report of Findings and Recommendation without further review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). In addition, failure to file timely objections to any factual determinations by a magistrate judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991); Fed. R. Civ. Pro. 72.